UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WENDELL LAROY FERRELL,

      Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.
_____/

Case No.  1:14-cv-1232

HON. JANET T. NEFF

**OPINION**

This is a social security action brought under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner).  Plaintiff Wendell Laroy Ferrell seeks review of the Commissioner's decision denying his claim for disability insurance benefits (DIB) and supplemental security income (SSI) under Titles II and XVI of the Social Security Act.

**STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process.  *See Willbanks v. Sec'y of Health & Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1998).  The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision.  *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).  The Court may not conduct a *de novo* review of the case, resolve evidentiary conflicts, or decide questions of credibility.  *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  It is the Commissioner who

is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

**PROCEDURAL POSTURE**

Plaintiff was 53 years of age on the date of the Administrative Law Judge's (ALJ) decision. (Tr. 14, 76.) He completed the twelfth grade, attended some college classes, and was previously employed as a customer service manager. (Tr. 38, 62.) Plaintiff applied for DIB on April 24, 2012, and SSI on April 30, 2012, alleging that he had been disabled since March 6, 2011, due to left knee total replacement, cervical fusion, type 2 diabetes, congestive heart failure, high blood pressure, and high cholesterol. (Tr. 68–69, 76, 86.) Plaintiff's applications were denied on July 20,

2012, after which time he requested a hearing before an ALJ. (Tr. 100–22.) On May 30, 2013, Plaintiff appeared with his counsel before ALJ Carol Guyton for an administrative hearing with testimony being offered by Plaintiff and a vocational expert (VE). (Tr. 31–66.) In a written decision dated July 12, 2013, the ALJ determined that Plaintiff was not disabled. (Tr. 14–30.) On September 28, 2014, the Appeals Council declined to review the ALJ's decision, making it the Commissioner's final decision in the matter. (Tr. 1–4.) Plaintiff subsequently initiated this pro se action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining the claimant's residual functional capacity (RFC). *See* 20 C.F.R. §§ 404.1545, 416.945.

---

[1] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. § 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. § 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. § 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. § 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. § 404.1520(f)).

Plaintiff has the burden of proving the existence and severity of limitations caused by his impairments and that he is precluded from performing past relevant work through step four. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). At step five, it is the Commissioner's burden "to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.*

ALJ Guyton determined Plaintiff's claim failed at the fifth step of the evaluation. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date. (Tr. 19.) At the second step in the sequential evaluation, the ALJ determined Plaintiff had the following severe impairments: (1) degenerative disc disease of the cervical spine, status post fusion; (2) degenerative joint disease of the left knee, status post total knee arthroplasty; and (3) history of chronic heart failure, with ejection fraction of thirty percent in 2007, but returned to normal. (Tr. 19.) At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments. (Tr. 20.) At the fourth step, the ALJ found that Plaintiff retained the RFC based on all the impairments:

> to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the claimant can never climb ladders, ropes, or scaffolds. The claimant can occasionally perform other postural activities, except the claimant can never crawl. The claimant would need a cane for balance.

(Tr. 25.) Continuing with the fourth step, the ALJ also determined that Plaintiff was unable to perform any past relevant work. (Tr. 23.)

At the fifth step, the ALJ questioned the VE to determine whether a significant number of jobs exists in the economy which Plaintiff could perform given his limitations. *See Richardson*, 735 F.2d at 964. The VE identified the positions of customer complaint clerk,

scheduler, and customer service representative as jobs Plaintiff could perform. (Tr. 62–64.) The VE further testified that these positions amounted to at least 12,300 jobs in the State of Michigan. (Tr. 64.) This represents a significant number of jobs. *See Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988); *McCormick v. Sec'y of Health & Human Servs.*, 861 F.2d 998, 1000 (6th Cir. 1988).

Accordingly, the ALJ determined that Plaintiff was not under a disability at any point from March 6, 2011, (the alleged onset date) through July 12, 2013, (the date of the decision). (Tr. 24–25.)

## DISCUSSION

Plaintiff's pro se brief presents two separate statements of error which do not directly correspond to the arguments developed in the brief's argument section. After reviewing the brief, the Court gleans the following claims of error:

1. The ALJ erred in discounting Plaintiff's credibility;

2. The ALJ erred in relying on the opinion of Dr. Saadat Abbassi, a state agency medical consultant;

3. The ALJ erred in finding Plaintiff was not Disabled under the Medical-Vocational Guidelines; and

4. The ALJ failed to adopt the VE's testimony regarding a hypothetical that incorporated his subjective complaints.

(ECF No. 10, PageID.925–28.) The Court will consider the issues below.

### A.     Credibility

At the administrative hearing, Plaintiff testified that he was far more limited than that recognized by the ALJ. Specifically, Plaintiff stated that he could not work due to weakness on the right side of his body, fatigue, tremors, and problems with his gait due to a dragging right leg. (Tr. 44–45.) Plaintiff argues that he is entitled to relief because the ALJ's rationale for discounting his

5

testimony is not supported by substantial evidence.

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, *may* be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984) (emphasis added); *see also*, *Grecol v. Halter*, 46 F. App'x 773, 775 (6th Cir. 2002) (same). As the relevant Social Security regulations make clear, however, a claimant's "statements about [his] pain or other symptoms will not alone establish that [he is] disabled." 20 C.F.R. § 404.1529(a); *see also*, *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)); *Hash v. Comm'r of Soc. Sec.*, 309 F. App'x 981, 989 (6th Cir. 2009). Instead, as the Sixth Circuit has established, a claimant's assertions of disabling pain and limitation are evaluated pursuant to the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531 (citations omitted). This standard is often referred to as the *Duncan* standard. *See Workman v. Comm'r of Soc. Sec.*, 105 F. App'x 794, 801 (6th Cir. 2004).

Accordingly, as the Sixth Circuit has repeatedly held, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)). However, where the objective medical evidence fails to confirm the severity of a claimant's subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record."*Id.* 105 F. App'x at 801 (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Id.* (citing *Walters*, 127 F.3d at 531); *see also*, *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001) ("[i]t is for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony"). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations to not be fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 780 (6th Cir. 1987). In fact, as the Sixth Circuit recently stated, "[w]e have held that an administrative law judge's credibility findings are virtually unchallengeable." *Ritchie v. Comm'r of Soc. Sec.*, 540 F. App'x. 508, 511 (6th Cir. 2013) (citation omitted).

In finding that Plaintiff's testimony was only partially credible, the ALJ noted that Plaintiff's testimony was undercut by his daily activities, part-time work after his alleged onset date, and the objective medical record. (Tr. 21–22.) The ALJ's reasons are supported by substantial evidence. Plaintiff's testimony and function report demonstrate that he was not nearly as limited as alleged. For example, Plaintiff stated he could prepare meals, clean, mow the law, go shopping, drive, attend church, and golf twice a month. (Tr. 55–57.) This is consistent with Plaintiff's function report in which Plaintiff stated he takes care of his two children, handles his personal care, prepares meals, cleans, does laundry, drives, goes shopping, and plays golf. (Tr. 210–213.) Contrary to Plaintiff's assertion, the ALJ did not err in considering these activities of daily living when assessing the claimant's credibility. *See Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007); *Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990); *see also Keeton v.*

*Comm'r of Soc. Sec.*, 583 F. App'x 515, 532 (6th Cir. 2014) ("Although the ability to do household chores is not direct evidence of an ability to do gainful work, an ALJ may consider household and social activities engaged in by the claimant in evaluating a claimant's assertions of pain or ailments.") (citations and quotations omitted).

Even if that were not the case, the ALJ provided two other reasons for discounting Plaintiff's credibility which are also supported by substantial evidence. The record shows that Plaintiff earned a net total of $2,400 in part time work as an inspector in the first five months of 2012. (Tr. 219–220.) Plaintiff testified that he worked two to three times a week for a period of three hours a day. (Tr. 53.) Plaintiff drove himself to the location, took photographs, interviewed individuals, and thereafter wrote a report on deadline. (Tr. 53.) Plaintiff's ability to perform the duties of this part time work was a relevant consideration in the ALJ's determination that Plaintiff was not as limited as alleged. *See Luggen v. Colvin*, No. 14-139-WOB-CJS, 2015 WL 5707211, at *13 (E.D. Ky. Aug. 28, 2015) *report and recommendation adopted*, No. CV2014139WOBCJS, 2015 WL 5723578 (E.D. Ky. Sept. 29, 2015) (collecting cases).

The ALJ also noted that the medical evidence did not support a finding that Plaintiff was as limited as that alleged. (Tr. 22.) This too is supported by substantial evidence. For example, treatment notes from three weeks, six weeks, and three months after Plaintiff's left knee replacement show Plaintiff experienced a dramatic improvement. During the three month checkup on October 25, 2011, Plaintiff was described as having strength of 5/5. (Tr. 435.) The treatment note also stated that Plaintiff had made a lot of progress, had good function, was back working, and had minimal pain. (Tr. 435.) A checkup after Plaintiff's cervical fusion surgery noted Plaintiff's complaints of right side weakness, but noted he had a motor strength of 4/5. (Tr. 643.) A March 2, 2013, treatment

note from Dr. Karen Ohn found that Plaintiff had no motor weakness, and intact balance and gait. (Tr. 872.) All this supports the ALJ's reasons for discounting Plaintiff's credibility, and Plaintiff's argument is thus rejected.

### B.     Medical Opinions

On July 19, 2012, Dr. Saadat Abbasi, M.D., a medical consultant, reviewed the medical record and opined on Plaintiff's RFC for the state disability agency. Dr. Abbasi opined that Plaintiff was able to perform light work, subject to several additional postural limitations. (Tr. 82–84, 92–94.) The ALJ gave the opinion "some weight," noting that the record supported postural limitations, but found that Plaintiff's testimony and further developments in the record supported an RFC for only sedentary work. (Tr. 22–23.) The gist of Plaintiff's argument is that because Dr. Abbassi did not review later developments in the record (dating through May 2013) the ALJ should have sought out an updated medical opinion and erred in giving any weight to Dr. Abbassi's opinion. (ECF No. 10, PageID.927–28.)

Plaintiff's argument does not provide a basis for disturbing the Commissioner's decision. Given the delay inherent in the administrative review process, few, if any cases, will present a static medical record from a date before the decision on initial review through the date of the ALJ's decision. It is patent that the ALJ understood that Dr. Abbasi rendered an opinion on the basis of the medical record as it existed in July 2012. (Tr. 22–23.) The ALJ was free to consider Dr. Abbasi's opinions and determine what weight, if any, they should be given. "Social Security regulations recognize that opinions from non-examining state agency consultants may be entitled to significant weight, because these individuals are 'highly qualified' and are 'experts in Social Security disability evaluation.'" *Cobb v. Comm'r of Soc. Sec.*, No. 1:12–cv–2219, 2013 WL

5467172, at *5 (N.D. Ohio Sept. 30, 2013) (quoting 20 C.F.R. §§ 404.1527(e)(2) (i), 416.927(e)(2)(i)); *see Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994); *see also Brooks v. Comm'r of Soc. Sec.*, 531 F. App'x 636, 642 (6th Cir. 2013) ("[I]n appropriate circumstances, opinions from State agency medical and psychological consultants . . . may be entitled to greater weight than the opinions of treating or examining sources.").

Plaintiff's claim that because Dr. Abassi did not review the entire record, the ALJ erred in giving weight to the opinion is without support. "When an ALJ relies on a non-examining source who did not have the opportunity to review later submitted medical evidence, especially when that evidence reflects ongoing treatment," the Sixth Circuit requires "some indication that the ALJ at least considered these [new] facts before giving greater weight to an opinion that is not based on a review of a complete case record." *Brooks v. Comm'r of Soc. Sec.*, 531 F. App'x 636, 642 (6th Cir. 2013). Here, the ALJ explicitly stated that due to the subsequent developments in the record, the evidence only supported a sedentary RFC.

Finally, the ALJ was not required to obtain another consultative examination. An ALJ has the discretion to determine whether further evidence, such as additional examinations are necessary. *Hayes v. Comm'r of Soc. Sec.*, 357 F. App'x 672, 675 (6th Cir. 2009) (citing 20 C.F.R. § 404.1517 ("If your medical sources cannot or will not give us sufficient medical evidence about your impairment for us to determine whether you are disabled or blind, we may ask you to have one or more physical or mental examinations or tests.")). "[T]he regulations do not require an ALJ to refer a claimant to a consultative specialist, but simply grant him the authority to do so if the existing medical sources do not contain sufficient evidence to make a determination." *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986). In other words, the regulations "do[ ]

not require a consultative examination at government expense unless the record establishes that such an examination is necessary to enable the administrative law judge to make the disability decision." *Landsaw*, 803 F.2d at 214 (internal quotation marks omitted) (emphasis in original). *See also, Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996) ("[a]n ALJ must order a consultative evaluation when such an evaluation is necessary to enable the ALJ to make the disability determination"). Here, the record was sufficient to enable the ALJ to make a disability determination. The ALJ was not required to seek out an additional consultative examination. Plaintiff's claim of error is thus rejected.

### C. Medical-Vocational Guidelines

An ALJ's finding that a plaintiff possesses the capacity to perform substantial gainful activity that exists in the national economy must be supported by substantial evidence that the plaintiff has the vocational qualifications to perform specific jobs. *Varley*, 820 F.2d at 779. This evidence may be produced through the testimony of a VE in response to a hypothetical question which accurately portrays the claimant's physical and mental limitations. *See Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 632 (6th Cir. 2004); *Varley*, 820 F.2d at 779. Accordingly, the ALJ posed several questions to the VE at the administrative hearing. (Tr. 61–65.) The VE first classified Plaintiff's past work as a customer service manager, which was based off her earlier questioning of Plaintiff. (Tr. 41–44, 62.) Next, the VE identified several skills that Plaintiff would have acquired in this past work and would transfer into other positions. The VE identified these skills as customer service skills, communications skills, problem-solving skills, and supervisory skills. (Tr. 63.) The VE further identified the positions of customer complaint clerk, scheduler, and customer service representative as positions to which those skills would transfer. (Tr. 63.) Plaintiff presents several

claims regarding the ALJ's treatment of the VE's testimony that all amount to an argument that he should be found disabled under the Medical-Vocational Guidelines, or "Grids."

The Grids consider four factors relevant to a particular claimant's employability: (1) residual functional capacity, (2) age, (3) education, and (4) work experience. 20 C.F.R., Part 404, Subpart P, Appendix 2. Social Security regulations provide that "[w]here the findings of fact made with respect to a particular individual's vocational factors and residual functional capacity coincide with all the criteria of a particular rule, the rule directs a conclusion as to whether the individual is or is not disabled." 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00. In other words, a claimant may be awarded benefits if he satisfies the requirements of one of the particular rules correlating to a finding of disability. *See Russell v. Comm'r of Soc. Sec.*, 20 F. Supp. 2d 1133, 1134 (W.D. Mich. 1998).

The ALJ found that Plaintiff possessed the following vocational factors: (1) was limited to sedentary work; (2) was closely approaching advanced age;[2] (3) possessed at least a high school education; and (4) had previous work skills that were transferrable. (Tr. 23). According to the grids, an individual possessing these particular vocational factors is considered "not disabled." *See* 20 C.F.R., Part 404, Subpart P, Appendix 2, § 201.15. Because, however, the ALJ determined Plaintiff possessed additional nonexertional impairments, the ALJ used § 201.15 as a framework and consulted a VE as to whether jobs exist in the economy that someone similar to Plaintiff could perform. The VE testified that there were. (A.R. 61–65). Relying on the VE's testimony, therefore,

---

[2] The ALJ erred in using Plaintiff's age as of his alleged disability onset date. (Tr. 23.) The relevant time for determining a claimant's age in applying the regulations is not the alleged onset date, but rather the date of the ALJ's decision. *Varley,* 820 F.2d at 780 ("the claimant's age as of the time of the decision governs in applying the regulations"). The ALJ's error here is harmless, however, as the Plaintiff's age of 53 is still classified as closely approaching advanced age. *See* 20 CFR §§ 404.1568, 416.968.

the ALJ found that Plaintiff was not disabled. (A.R. 24).

Plaintiff's argument centers on the differences between Grid Rules 201.14 and 201.15. In the former, a claimant limited to sedentary work, closely approaching advanced age, possessing at least a high school education, who does not have transferable work skills is automatically determined to be disabled. In the latter, the same claimant, but who does have transferable skills is not automatically disabled. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2. After determining Plaintiff had transferable skills, the ALJ used Rule 201.15 as a framework to determine that Plaintiff was not disabled. (Tr. 23; *see Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 424 (6th Cir. 2008)). The relevant inquiry, then, is whether Plaintiff had transferable skills. "Transferability means applying work skills which a person has demonstrated in vocationally relevant past jobs to meet the requirements of other skilled or semiskilled jobs." SSR 82–41, Titles II & XVI: Work Skills & Their Transferability As Intended by the Expanded Vocational Factors Regulations Effective Feb. 26, 1979, 1982 WL 31389 at * 2 (S.S.A. 1982). As noted, at the administrative hearing the VE testified that Plaintiff obtained several skills in his past work that would transfer to other positions. The VE further testified that there would be a "less than minimal adjustment" for Plaintiff to these positions. (Tr. 63.) In fact, the VE stated that the skills in these other positions were really subsets of skills Plaintiff had already developed. (Tr. 63.) The Court agrees. The VE's testimony provides substantial evidence that Plaintiff acquired skills that would transfer to several other positions, and accordingly, Plaintiff's claim is rejected.

  **D.**  **Hypothetical**

Plaintiff next contends that the ALJ erred by refusing to adopt the hypothetical posed to the VE which incorporated his subjective complaints. (ECF No. 10, PageID.928.) However, a

hypothetical question need only include those limitations which the ALJ accepts as credible. *See Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990). It is well settled that a hypothetical question to a VE need not include unsubstantiated complaints. *See Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993); *see also Carrelli v. Comm'r of Soc. Sec.*, 390 F. App'x 429, 438 (6th Cir. 2010) ("[I]t is 'well established that an ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as credible by the finder of fact.'") (quoting *Casey*, 987 F.2d at 1235). The VE does not determine a claimant's medical restrictions or how they impact the claimant's RFC—that is the ALJ's job. *See Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 247 (6th Cir. 1987). The ALJ, having found that Plaintiff's subjective complaints were not fully credible, was not bound by the VE's responses to hypothetical questions incorporating a contrary assumption.

The Court finally notes the ALJ's hypothetical questions to the VE did not include all the limitations which the ALJ found credible, because it omitted postural limitations which were part of Plaintiff's RFC, *i.e.*, only occasional postural activities and no crawling. (Tr. 22, 63–65.) While the ALJ should have posed these limitations in a hypothetical to the VE, in this instance the Court agrees with Defendant that the ALJ's error is harmless. An ALJ's violation of the Social Security Administration's procedural rules is harmless and "will not result in reversible error absent a showing that the claimant has been prejudiced on the merits or deprived of substantial rights because of the [ALJ]'s procedural lapses." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546–47 (6th Cir. 2004). The Court finds the error here to be harmless because the DOT descriptions for the positions identified in support of the Commissioner's step 5 finding do not require the postural abilities that the ALJ found Plaintiff had limitations in doing. Postural limitations include activities

such as climbing ladders, ropes, or scaffolds, balancing, kneeling, crouching, or crawling. SSR 96–9P, Titles II & XVI: Determining Capability to Do Other Work-Implications of A Residual Functional Capacity for Less Than A Full Range of Sedentary Work, 1996 WL 374185 at *7 (S.S.A. July 2, 1996). A review of the DOT descriptions for the jobs identified by the VE demonstrates that the postural abilities Plaintiff would be limited in are not required abilities for the positions. *See* SCHEDULER, DICTIONARY OF OCCUPATIONAL TITLES, 1991 WL 672210 (4th ed. 1991); CUSTOMER SERVICE REPRESENTATIVE, DICTIONARY OF OCCUPATIONAL TITLES, 1991 WL 672224 (4th ed. 1991); CUSTOMER-COMPLAINT CLERK, DICTIONARY OF OCCUPATIONAL TITLES, 1991 WL 672252 (4th ed. 1991). Accordingly, the ALJ's failure to include all credible limitations into his hypothetical to the VE amounts to harmless error. Plaintiff's claims are thus rejected.

## CONCLUSION

For the reasons set forth herein, the Commissioner's decision will be **AFFIRMED**. A separate judgment shall issue.

Dated:     January 27, 2016              /s/ Janet T. Neff
                                         JANET T. NEFF
                                         UNITED STATES DISTRICT JUDGE